Good morning. Can we please record? My name is Mario Valencia. I represent the appellant, Alexander Kostyukov, in this case. And if it's okay, I'd like to reserve two minutes for rebuttal. We'll try to help you, but please watch the clock. Will do. So, in this appeal, we're asking the court to reverse and vacate Mr. Kostyukov's sentence, and we may have to re-sentencing because the district court miscalculated the guidelines. That's procedural error, and we believe it's serving of a remand because it offended his substantial rights, and the court did not in any way, shape, or form indicate that he would have imposed the sentence that he did, regardless of what the guideline calculations would be. I'm sorry to interrupt you, sir. That's okay. I've done your job, too, but I'm a district judge, and every time I look at one of these, I try to see what the district judge did wrong. I mean, it's sort of, if I was there, would I recommend that this was done wrong? And I've looked at the transcript each time through, and I'm supposed to take a decision, and if you look at that, the government version does this calculation of the guideline, and it says it's 40, and then it explains why it's 40, and then it says that it summarizes why you could believe these enhancements should be applied, and then it asks the defense counsel for its comments, and the defense counsel says, agrees that the defense counsel is 40, agrees with the presentation made by the dispute with that, and agrees to the guideline range, and the government is offering more testimony on when it's talking about how to do the calculations. So, if I was sitting there, there's no dispute about this. This man is telling me he agrees with the 40 points, he agrees with the enhancements, doesn't have anything to add, agrees with the guideline range, and is only talking about what to do with that guideline range. It seems to me that any argument in front of me would have been wavered, because I would have said, if you're disagreeing with any of these, look, you might have new witnesses, and they're aware in front of me of these things. What should the district attorney have done when you, your representative, says, I don't have anything to object to, in respect of what's on the list here? Well, there's a lot in that question. So, let me start out by saying that it's true that he did not object to three of the enhancements, that we are challenging upon appeal. We're challenging for, again, enhancements that were imposed, loss amount in the range of $50.8 million. There was also a sixth level enhancement that was applied, because the court said there was substantial financial hardship to 25 or more victims. Then he applied a leadership role adjustment. He added two levels for being the leader, organizer, manager. And then he added two more levels on top of that, for being in the business of receiving and selling stolen property. So, Kuskoff objected to the first one, at the time that he was pleading guilty, which was the loss amount. He didn't object to the seventh signal? He did not. That's absolutely true, and he did not put in his NC memorandum that he was objecting to the loss amount. What counsel did, and if you're reading, these are on pages 11 and 12, just to give a little background on it. So, did you answer Julia's question about what the judge should have done in light of the fact that there were no objections in the sentencing hearing? Yes, absolutely. Just because there's no objection doesn't mean that we can't raise certain issues on appeal when there's plain error. So, at most, right, under Rule 32, which is one of the positions that the government takes in this case, is that, well, the court adopted this. There has to be proof or something to support that enhancement. And so, usually, when there's no objection, right, you look to the PSR, and you can look to the PSR and say, well, in the PSR, there was evidence to support this enhancement, and the court just adopted the PSR. But there is no evidence for these enhancements in the PSR. So, there's no evidence at all. Maybe this is something that's supposed to go away. I'd argue it's fair to do it. But, certainly, that happens a lot of times in the district court, is a lawyer will summarize something. And it may not be any other proof. It's a proffer. And a proffer would be that it's supposed to be. If you couldn't accept the proffer, you'd have to have something in evidence. But it's a proffered sentence, just like the easement down here. And he's offered to put on testimony about the easement there. And so, his counsel says, you don't have to do that. So, it seems to me, even if there was no record of loss, but this attorney outlined what his proffer was, what he's done, and he says, I got a witness to do that. And if that's what he says, you don't need to. I agree with it. I don't know. I mean, I'm trying to put myself in this spot where that district judge was, and I don't know if I'm still going to call a witness anyway because I don't know. I'm not saying he had to call witness order. Well, I think that is what you're saying. Isn't that what you're saying? You're saying it was plain error for the judge not to require more evidence. I think you are saying that. I am saying, you're right, Your Honor. I am saying that they had to put on evidence. But here's the sequence of events. Did you give me a fair shot? Let me give this a shot. Here's the sequence of events, the way that it happens. Klaus Yerkau was offered three plea agreements before he pleaded guilty. He rejected all of them because he was going to dispute the loss amount. It was an astronomical amount of $50.8 million. It had to do with three or four other organizations he said that he had nothing to do with. He pleads in late 2013. For two years, because he cooperated with the government, he was willing to testify in trials. They would come up. That didn't happen. During those two years, other people pled guilty and were sentenced. And the court found in those other sentencing hearings that the loss amount was $50.8 million. Counsel, I'll admit it, that this was a mistake on his part. But when he comes into the sentencing, he reminds the court, listen, court, I don't take issue with the government who is now saying that instead of a level 24, it's a level 22 when you're talking about $50.8 million. And he says right in here, we don't take issue with that analysis. The minus two levels. But then he reminds the court, if you'll remember, Klaus Yerkau didn't plead guilty because he was going to dispute the loss amount. But since he's pled guilty, this court has over and over found that it was $50.8 million. The restitution loss. And he mistakenly thinks the restitution loss counts for a sentencing purposes loss amount. And then it's not that he's acknowledging or agreeing that $50.8 million is correct. He's just simply waving the white flag and saying it's a moot issue. He was wrong. But he's saying the issue is moot. You've already ruled that. So fine. That's the situation. So it's $50.8 million. That's what happened in this case. He has not in any way and nowhere in the record has he said, I agree. $50.8 million is the right amount. We don't take issue with that calculation or whatever. He is simply pointing out, look, you've already ruled. And it says you've ruled. And it's moot is what he's thinking. We're not going to go ahead and waste time on those. We'll take our time and address the issues that need to be addressed.  Even if we agree with you that one of these was a clear error, it seems like he got such a lower sentence than the guidelines and the judge was trying to match up to the other defendants. So how can you show that there was an effect on his substantial rights? Just for example, the following. If you were to take the other three, let's say, for loss amount, you would just sign it. You know what, you're wrong. Mr. Fuller, Mr. Coats, you're caught. That was caught. It was waived. But just a substantial financial hardship, those added up together are ten levels. Now, the correct, according to the government, I'm sensing the correct guideline calculation, right, ended up with a full offense level of 40. Okay. If you were to take away those ten levels, that would be a level 30. Then because he cooperated with the government, the 5K, they asked for three more levels off of that. That would bring it down to a level 27. At a level 27, Category 1, he was looking at 70 to 87 months, and the sentence that was imposed here was 108 months, because he was originally looking at, like, 210 months. We need all of them to get to that. We do. We think we have good arguments. Unfortunately, I can't give estimates. Maybe you should take the rest of your time for rebuttal. Yes, please. Thank you. Excuse me. Good morning. My name is Nancy Olson, appearing on behalf of the government. We have used the court in order to address the arguments, in order that they were raised by Mr. Valencia. Starting off, Judge Whaley is absolutely correct in his comments that the district court didn't have to do anything wrong here. There's nothing else that could have been done in light of the record where the defendant either agreed or essentially waived those arguments. Moreover, the guidelines and speculations were correct. When there's no objection from the defendant, the court can rely on Rule 32 to say that anything in the PSR is a finding of fact. And we've said it in our brief different portions of the PSR. I don't see anything in the PSR that addresses substantial financial harm to 25 victims, showing that an actual amount to 25 victims was substantial. Can you address that issue? Yes, Your Honor. So there is not a paragraph in the PSR that lists out 25 separate financial institutions. That's correct. And so I'd like to draw your attention to what it was the district court had in front of it to make this finding. First there, F23, it refers to millions of individual victims and also counts financial institutions. And how do we know that each of those victims didn't only have an injury of $5? The district court had in front of it the trial exhibits from Mr. Capese's trial. This is a co-defendant. And some of those exhibits were detailed spreadsheets that listed out these items item by item. But do we have those in the record here? They were not submitted in the Apollo record. They were in front of the district court's trial exhibits, admitted in the Capese trial specifically. So I could only find, I think, four victims' visas. We have amounts in this record, I think, for four victims that are high amounts, but nothing that I could find on any others. Can you point to anything in our record here that gives us numbers for any other victims? So we pointed to the Capese trial transcript, because there you have the visa and MasterCard witnesses testifying, and they're explaining how the laws work. And they said, we're sort of the upper-level entity that doesn't lose money because we have all those banks flowing through us. And so although they can tell you the overall loss, they don't take the loss. The loss goes to those state-level merchant banks who have to take the loss. But for the mid-level banks, I think those would have to be the 25 victims. Correct. Do we have anything in the record here that tells us that it's not the case that one of them got the whole loss and all the others got $5? Just the trial exhibits that were at the district court. So what are we supposed to do here on appeal with not having this? Well, on plain error review, this court has to look to whether or not there was anything that the district court could have relied upon. And we have these also pointed to paragraphs 24, 26, and 30 in the PSR. These are sort of the overall paragraphs summarizing the loss, summarizing who was involved and how we get to the good $3.8 million. And so knowing that the district court had in front of him those detailed loss and learn about the district judge. It's the same district judge. So we just have to assume that the exhibits that we can't see had this information? You have to ask, is the judge plainly erred? And so knowing what he had in front of him in combination with the summaries, maybe those exhibits showed $5 for every victim and one with a higher one. How do we know that they didn't? This court does not know because we did have some of those exhibits, and that's correct. But we're looking here at what the district court did with the information in front of him and the lack of objection. And so was there any reasonable basis that this court can say that he plainly erred, knowing that he had that information in the trial, knowing that he had? Well, but isn't it the government's burden to show that the enhancement is justified? And if the government didn't put it into the record in this case, we're really in a problem on appeal, aren't we? So this is back to the comments that were made earlier about the government making a proffer and saying, here's what we have. We have the witness there. They did have Agent Adams sitting there at the time of this sentencing. But because nothing was contested, that's where it stopped. There was no further evidence put on to support any of these because Mr. Kostikoff let him set the case, not contesting the PSR. The real issue in this case is this is kind of a weird situation. So, I mean, we have a plain error rule that does let us review things that aren't objective to do. We're in some kind of super plain error here. And is there some case that helps us with this weird situation where I do think it was worse for the government because they said they weren't contesting it, and yet I don't know how that fits with our plain error rule that says we're supposed to review things for plain error. You know, it's not a different ruling, Arne. It's just that in our normal rulings, you need to have to look at what the district court had in front of it and see if that was sufficient. It doesn't even take up argument that you said, you know, without those spreadsheets, we can't support just today. So then the next question is, does Mr. Kostikoff let his burden to show prejudice? And he can't show that on any of these enhancements. And the reason is, if you look at how the sentencing played out, again, his guidelines range was astronomical. We're talking it was 260 with the 5K. It was 80 as low as 210. But the district court essentially set all that aside because he said, look, I have all these co-dependents that have come in front of me and argued in sentence. The government pointed out there was a group structure in place. People were getting sentenced based on their role in this organization. And specifically, Mr. Kostikoff was a vendor. He was in a bucket of cash on services. And so the PSR recommended 120 months. And the real dispute amongst the parties under the court to resolve was how far below 120 months the court should come. And so the government said, we think 120 is too high. We're actually going to argue for 108 with an additional variance. And Mr. Kostikoff obviously argued lower than that. But the court here said he had to be sentenced. He was very concerned about sentencing disparity. He talked about it in the record. All the way from pages 19 through 35, there's district court comments about sentencing disparity and all this culpability, as well as hearing arguments from the parties on this issue. And so with that being the crux of the district court's concern and rejecting the argument that Mr. Kostikoff should get a sentence around 70 months, which would have put him in the territory of a member. That member was the lowest level person in this organization. And he certainly was not in that boat. And so two-part judgment. That wasn't quite the district's judgment. One of the differences is you start at a higher level, not just as a vendor, but the extent of your involvement in the operation. What do you think the judge meant by you start at a higher level? He looked at how much Mr. Kostikoff was involved. And so he looked at the number of stolen identities that were on his computer, his stolen credit card information. There were several examples given of how he was doing his cash-in. So he seems to think that wasn't a reference to the guideline range that the judge was using, the guideline range as an anchor. You think it was just a subjective description of the involvement? It could have also been referencing a loss. But in any event, that guidelines range was correct. Because even if you look at how the other co-defendants were based on plus or minus three years of involvement and so on, even if we said, okay, maybe he had done to approximately $40 million, it's the same guidelines bracket of $25 to $65 million. So there's no error. If he didn't have 25 victims, the overall range would be lower, right? That's correct. His position is he essentially was part of this organization. He was familiar with the record in the other case. He knew what was going on. He essentially agreed. He did, because Mr. Kostikoff strangely argued for this lower sentence. And the court said, I can't do that, except for the government's argument, which was if you sentence him as a member, we have other vendors and higher-level people that are still on the pipeline, and they're going to come in here and say, well, this vendor got the same as a member, so I should also get something like 60 months, 70 months, whatever the case may be. And so the district judge did this specifically to keep the group structure in place and to have the relative culpability in something where Kostikoff did not see significant involvement. But with respect to the 25 victims, didn't he in effect agree there were 25, at least 25, that were substantially injured? Do you think Mr. Kostikoff did? Yes, he did. He did not object to this. Let me just add back to the district judge. The U.S. Attorney said that he will remember that he's an avid testifier in the trial. There were actually many more financial institutions that suffered a substantial financial hardship, including numerous overseas financial institutions that would have required multiple and excessive MLA teams for us to obtain their result. And then we had the consultant not to engage in that activity. Amazing animals, as you've been happy to testify, more this morning, as you've been glad to hear more on that issue. So it seems a direct issue of how many banks there were was referenced in the testimony, but that they had summarized at the trial that they often couldn't even understand. That's right. I don't know how you could do any more on that, except couldn't understand any of it. What they would have done is put them on the stand and they would have introduced the spreadsheets in this particular sentencing hearing, rather than having us simply point back to the canvass trial to sort of recreate, well, what would have happened if they put in a pending objection? What do you think substantial means with respect to a financial institution? If you look at the criteria and the guidelines, they're a little more, they're about individualism. Correct. So things like insolvency and awesome job, having to move, things like that, it's a little bit harder to say if you're going to look at the size of the financial institution, how it affected, perhaps, revenues, things like that. Do they have to lay people off? They just recently, again, looked for any updated cases on this. It's a relatively new enhancement. They did not find anything, so I don't have a case to point the court to about financial institutions specifically. But we did set a Seventh Circuit case that talks about individuals, and more specifically talks about how district courts really have latitude here to look at whatever they can find in a large record that may or may not bear on this. And so it might have to do with individual victims having to repair their credit and dealing with the stress and the loss and things like that might have to do with banks. And so there would be disruption in operations, certainly. There would be a hit to the banks' own revenues because these jurisdictions have addressed those issues. They had light on the transactions that were fraudulent. They were not particularly sortable by entity. So it would have been more the district court taking the evidence you heard at trial, taking what he knew, each of the items, each of the master card and everyone testified to, and looking at that volume to indicate whether he had some sort of reasonable basis. And the question here, was it plain error rather than, did he have something? Did he have anything he could hang his hat on versus a complete absence of information in the record which he did not? So I see my time is about up. The court does not have any further questions. Thank you so much. Thank you. And yeah, I'd like to start off just addressing the substantial financial hardships standard change. And under comment four of that guideline, it lists what substantial financial hardship is some of the factors to consider and other things. And first of all, in the cameras trial, he did, do you remember his name? He did not testify at all about the substantial financial hardship. As we put in our reply brief, and the court writes something very important here. It's on page 10, ER page 10. This is the government speaking. They said that they would have required multiple and excessive amounts for us to obtain that result and we chose not to engage in that activity, meaning they didn't get the evidence to, and they don't have evidence to show exactly how much each bank suffered. So here's the way that it goes. Visa and MasterCard suffered no loss directly. They put in their brief, they had 20,000 banks. And those 20,000 banks, according to them, was a cumulative amount of four and a half million. When you take 20,000 to four and a half million, you throw those banks at each one's secret executive, it's $225 for a bank financial institution. That's not a substantial financial hardship. And the court didn't go through and figure out any of those steps for financial hardship. Do you really think that the counsel could sit there and say, and essentially say, we have no objection, we agree, and then come up on it and say, oh, we didn't need to go through it sufficiently? We do, Your Honor, because there still has to be support for that enhancement. And the court can't just sit there and say, well, I'll give you another example. On the loss amount, you mentioned, Your Honor, that Lacoste Cop agreed to everything, so he's entitled, you know, he's responsible for everything. But in reality, he's not, and that's what the guidelines say. The entire scope of the conspiracy isn't exactly what one defendant may have done when he joined the conspiracy. It requires particularized findings. For example, the court made no mistake about it. Everybody agreed that Lacoste Cop played guilty to. That was if he was only involved in this organization from March 31 of 2008 to June of 2011. The investigation started in 2005 up to 2012. The loss amounts recorded by the only four credit card companies that these guys focused on and the only evidence that they submitted for the $50.8 million loss was based on 2004 to 2013. That's four years before Lacoste Cop joins this conspiracy and two years after. So how can you sit there and say, who can just take that saying there was no playing here? The point has to be how you are a defense counsel. Thank you. Thanks to both sides for the very helpful arguments the case has submitted.
judges: Schroeder, Friedland, Whaley